UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
HELLEN I. PERRY,

                      Plaintiff,  **MEMORANDUM & ORDER**
      - against -  01 Civ. 3590 (DRH) (WDW)

THE STATE INSURANCE FUND,

                      Defendant.
---------------------------------X

**APPEARANCES :**

**HELLEN I. PERRY**
Plaintiff Pro Se
4105 Chamption Road
Rock Hill, SC 29730

**NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL**
Attorney for Defendant
300 Motor Parkway, Suite 205
Hauppauge, NY 11788
By: Patricia M. Hingerton, Esq.

**HURLEY, District Judge**:

       Presently before the Court is Defendant's renewed[1] motion for summary judgment on the two remaining claims[2] in this case — a Title II ADA claim and a Title VII race discrimination claim. For the reasons set forth below, Defendants' motion is GRANTED.

---

      [1] Defendant's original motion for summary judgment was denied without prejudice due to the failure to file a "Notice to pro se litigant opposing motion for summary judgment" consistent with Local Rule 56.2. Such a notice was filed for Defendant's renewed motion.

      [2] By Memorandum and Order dated January 29, 2002, this Court granted Defendant's motion to dismiss all of Plaintiff's claims. On appeal, the Second Circuit affirmed the dismissal of Plaintiff's Title I ADA claim, Title VII sex discrimination claim and § 1983 claim. *Perry v. The State Insurance Fund*, 83 Fed. Appx. 351, 353 (2d Cir. 2003). The Second Circuit remanded the case as to Plaintiff's Title II ADA claim to allow her an opportunity to amend her complaint to allege discriminatory animus and vacated the dismissal of the Title VII race discrimination claim. *Id.* at 353-354. Plaintiff did amend her complaint and discovery has been completed.

## BACKGROUND

The following facts are drawn from Defendant's Local 56.1 statement, Plaintiff's statement of material facts, and the evidence submitted. The facts are undisputed unless otherwise noted.

Plaintiff, an African-American female was appointed to the position of Clerk 1, Grade 6 in the Actuarial Department of Defendant's office located in Hempstead, New York on September 24, 1992. Plaintiff's duties as a Clerk 1, Grade 6 included, but were not limited to, "maintaining records and files;" " receiving screening, reviewing and verifying documents;" and "searching for and compiling information and data." Civil Service Classification Standard for Clerk I, Grade 6 position (Ex. "D" to Herimaat Aff. dated Dec. 22, 2004, (hereinafter "Herimaat Aff.")). Plaintiff was assigned to the Actuarial Department where her duties included "retiring folders from the Claims-Medical Department" and "retrieving cases from the Claims-Medical Department for review by the Actuarial Department." Herimaat Aff., at ¶ 6. In order to perform these integral functions of the Clerk 1, Grade 6 position, it was necessary for Plaintiff to stoop, bend, lift and carry files.

Due to an injury to her knees Plaintiff was absent from work from February 1998 through April 1998. While she was out, a reorganization occurred. Upon Plaintiff's return in April 1998, she was reassigned on a rotation basis to the Claims-Medical Department which appointment resulted in an increased amount of files that Plaintiff was required to retrieve. During May 1998, Plaintiff presented notes and letters to her supervisor from her doctor, Dr. Benatar, M.D., to the effect that Plaintiff was limited to "light duty," and could not do any heavy lifting or carrying or bending. (Herimaat Aff., Ex. J & K.) On June 3, 1998, Plaintiff presented

to her manager a letter requesting a transfer due to the fact that she was "unable to perform the physical duties on a regular unit." (*See id.*, Ex. H.) This request was denied by Plaintiff's manager because according to him, there were no such positions available in the Clerk 1 category. Also on June 3, 1998, Plaintiff submitted a letter to Defendant's Director of Administration, claiming that her manager was discriminating against her because she was not being given a light duty assignment. (*Id.*, Ex. L.) An investigation was commenced by Defendant to determine what type of reasonable accommodation she required. Plaintiff was given a Request for Reasonable Accommodation form for her to complete and return. Plaintiff returned the form in early July 1998. In Section A of the form, Plaintiff requested light duty because she could not "do excessive bending, standing, walking or sitting. (*Id.,* Ex. O*).* In August 1998, Plaintiff was examined by Employee Health Services ("EHS"). A determination was made by the EHS's doctor, Dr. Falco, that Plaintiff was unable to perform the essential functions of her position with or without reasonable accommodations. (*See id.*, Ex. P at 352.) Meanwhile, on June 10, 1998, Plaintiff went out on workers' compensation. After being out on leave for a year, on June 23, 1999, Plaintiff was terminated pursuant to Section 71 of the New York Civil Service Law.

On July 21, 1998, Plaintiff filed a complaint with the New York State Division of Human Rights ("SDHR"), alleging that she was discriminated against based on disability under Title I and II of the ADA, race, and gender. (Herimaat Aff., ¶ 17.) In its Determination and Order After Investigation dated October 27, 2000, SDHR determined that there was "No Probable Cause to believe that the said respondent has engaged in or is engaging in the unlawful discriminatory practice complained of." (*Id.*, Ex. T at 428.) On March 7, 2001, the Equal Employment

Opportunity Commission issued a Dismissal and Notice of Rights. (*Id.*, Ex. U at 506.) This action followed.

## SUMMARY JUDGMENT STANDARD

Summary judgment is generally appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Chelates Corp. v. Citrate*, 477 U.S. 317, 322 (1986). Rule 56(e) of the Federal Rules of Civil Procedure provides that a party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Pro. 56(e).

When a pro se litigant is faced with a motion for summary judgment, the court must "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Camb.*, 174 F.3d 276, 280 (2d Cir. 1999) (citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## DISCUSSION

### I. Plaintiff's Title II ADA Claim

Defendant moves for summary judgment as to Plaintiff's Title II ADA claim arguing that Plaintiff has failed to establish that its conduct was motivated by discriminatory animus or ill will based on her disability. (*See* Def.'s Summ. J. Mem. at 4.) Plaintiff opposes the motion claiming

that Defendant discriminated against her based on her disability by failing to provide her with reasonable accommodations and terminating her.

Title II of the ADA ("Title II") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A public entity includes "(A) any State or local government; [and] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government . . . . " 42 U.S.C. § 12131(1). It is undisputed that Defendant is a public entity within the meaning of the statute.

The Second Circuit has established that a private suit for money damages may be brought against a state or public entity if a plaintiff illustrates that the Title II violation "was motivated by discriminatory animus or ill will based on plaintiff's disability." *Garcia v. SUNY Health Scis. Ctr.*, 280 F.3d 98, 111 (2d Cir. 2001). The Court analyzes Plaintiff's claim according to the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Garcia*, 280 F.3d at 112. Under the burden-shifting analysis, plaintiff must first establish a prima facie case, then the burden of production then shifts to defendant employer to proffer a legitimate, non-discriminatory reason for its actions in order to rebut the presumption of unlawful discrimination, but the ultimate burden is then on plaintiff to establish to the fact finder that the defendant employer's reasoning is actually pretext for intentional discrimination. *Id.*; *see also Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998) (applying the *McDonnell Douglas* burden-shifting analysis to an ADA claim).

In order to establish a *prima facie* case under Title II of the ADA, Plaintiff must show (1) that she is a qualified individual with a disability; (2) that Defendant is subject to the ADA; and (3) that she was denied the opportunity to participate in or benefit from Defendant's services, programs, or activities, or was otherwise discriminated against by Defendant, by reason of her disability. *See Henrietta v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).[3] Defendant contends that Plaintiff has failed to establish a prima facie case of discrimination because she cannot show that she is a "qualified individual with a disability," thereby failing to establish the first factor.

"A qualified individual with a disability is defined as a disabled person who, whether or not given an accommodation, 'meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'" *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 84-85 (2d Cir. 2004). Defendant does not dispute the fact that Plaintiff is, in fact, an individual with a disability. Rather, Defendant's claim focuses on whether Plaintiff is "qualified," *i.e.* whether she can "meet the essential eligibility requirements" required for employment in a Clerk 1 position at NYSIF. *Id.* at 85.

The crux of Defendant's assertion that Plaintiff is not a "qualified individual with a disability" lies with Plaintiff's inability to perform the essential functions of her position with or without reasonable accommodation. (*See* Def.'s Summ. J. Mem. at 5-6.) "'Essential functions' are defined . . . to mean the 'fundamental' duties to be performed in the position in question, but

---

[3]There is a question of whether Title II ADA violations can be based on employment discrimination. *See Perry*, 83 Fed. Appx. at 353 n. 1. Although the Second Circuit has not formally addressed this issue, judges within the Eastern District of New York have applied Title II to employment discrimination claims. *See, e.g., Winokur v. Office of Court Admin.*, 190 F. Supp. 2d 444, 449 (E.D.N.Y. 2002) (Spatt, J.); *Simms v. City of New York*, 160 F. Supp. 2d 398, 400 n.1 (E.D.N.Y. 2001) (Johnson, J.); *Magee v. Nassau Cty. Med. Ctr.*, 27 F. Supp. 2d 154, 159 (E.D.N.Y. 1998) (Wexler, J.).

not functions that are merely 'marginal.'" *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997) (citations omitted).

The essential functions of the Clerk 1, Grade 6 position required Plaintiff to retrieve and pull files in which a necessary corollary was bending, stooping, and lifting. (*See* Herimaat Aff. ¶6.) Plaintiff, by her own admission, was unable to perform the duties prescribed by the NYSIF for the Clerk 1 position. In Plaintiff's letter dated June 3, 1998, in which she requested a transfer, she stated, "I'm unable to perform the physical duties on a regular unit. Due to the fact that I have several disabilities because of an accident. I've given you several notes in reference to these disabilities. I'm requesting to be moved to another unit." (*Id.*, Ex. H at 361.) In her application for a reasonable accommodation dated July 7, 1998, Plaintiff similarly stated that it was necessary that she have "a lite [*sic*] duty position because I can't do excessive bending, standing, walking or sitting." (*Id.*, Ex. O at 390.)

Defendant, in support of its contention that Plaintiff was not qualified, points to the EHS medical examination performed in August 1998. According to Dr. Falco, the EHS doctor who performed the evaluation, Plaintiff was "unable to perform the essential duties of her position with or without accommodations." (*Id.*, Ex. P at 352.) Plaintiff does not dispute the conclusions of Dr. Falco, and her own admissions support his conclusion. Therefore, no reasonable fact finder could conclude that Plaintiff was a "qualified" individual. *Cf. Rodal v. Anesthesia Group*, 369 F.3d 113, 119 (2d Cir. 2004) (reasonable accommodation can not involve elimination of essential function). That being the case, Plaintiff has failed to establish the first factor of her *prima facie* case. Accordingly, the Court grants Defendant's motion for summary judgment as to her Title II claim.

**II.     Plaintiff's Title VII Claim**

Defendant moves for summary judgment as to Plaintiff's Title VII race discrimination claim on the grounds that Plaintiff has failed to establish a *prima facie* case. (*See* Def.'s Simm. J. Mem. at 14.)

The *McDonnell Douglas* burden-shifting framework set forth above also applies to Title VII race discrimination claims. *McDonnell Douglas Corp.*, 411 U.S. at 802. Under this analysis Plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Id.* In order to establish a prima facie case of race discrimination, Plaintiff must show (1) she was a member of a protected class; (2) she applied for an available position for which she was qualified; (3) she suffered an adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination. *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004).

The first and third elements of the prima face case are not in dispute: Plaintiff, an African- American, is a member of a protected class and was terminated from her position at NYSIF, thereby being subjected to an adverse employment action. Defendant asserts that the second and fourth elements have not been satisfied. (*See* Def.'s Simm. J. Mem. at 14.)

As to the second element of the prima facie case, Defendant claims that Plaintiff, a Clerk 1 employee, was unable to show that she applied for an available position for which she was qualified. The burden is on the Plaintiff to establish that a suitable position exists. *See Jackan v. New York State DOL*, 205 F.3d 562, 567 (2d Cir. 2000) ( In an ADA discrimination claim, "a

plaintiff seeking to hold the employer liable for failing to transfer her to a vacant position as a reasonable accommodation must demonstrate that there was a vacant position into which she might have been transferred"). Defendant argues that Plaintiff did not show that there were any light duty assignments available at the time she made her request.

Plaintiff, on the other hand, claims that there were suitable positions available and that she was discriminated against based on her race by not being placed in one of these positions. In support of this assertion, Plaintiff alleges that three Caucasian employees were given light duty assignments such as data entry and paper filing when they were injured. No specifics are provided as to when these individuals were placed on light duty. Plaintiff has not submitted any evidence to support her position and instead relies exclusively on her assertions that the other employees were given these positions. It is well-established that such conclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56(e). *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985); *see also Meng v. Ipanema Shoe Corp.*, 73 F. Supp. 2d 392 (S.D.N.Y. 1999). Plaintiff also claims that there were subsequent hires that were given "light duty." Again, no specifics are given. In response to Plaintiff's assertion, Defendant has submitted unchallenged evidence that there were only three Clerk I hires during the relevant time period, none of whom were given "light duty". The first hire was in March 1998 when a white female was hired and assigned to the Claims-Medical Department —the very department to which Plaintiff did not want to rotate. Two new clerks, both African-American, were then hired in June 1998, after Plaintiff went out on workers' compensation. These individuals were assigned to the Executive and Premium Audit Departments. As Clerk I employees in these units, their duties required bending, lifting and pulling heavy folders. (Herimatt Aff. Exhs. I-K.)

Moreover, Plaintiff has conceded that she was no longer able to perform the functions of a Clerk 1 position. Plaintiff was "unable to perform the physical duties" of the position, such as bending, lifting, or stooping, which were integral components of the Clerk 1 position. (Herimaat Aff., Ex. K at 361.) The letter from EHS's doctor, Dr. Falco, confirms Plaintiff's inability to work in the Clerk 1 position for which she was hired. (*See id.*, Ex. P at 352.) Plaintiff argues that the examination forming the basis for Dr. Falco's opinion was conducted after she was injured and therefore insufficient. However, Plaintiff cannot escape the fact that her own doctor in May 1998 opined that she could not engage in any heavy lifting, carrying or bending and that she herself stated she could not perform the "physical duties in a regular unit." (*Id.* Ex. H*)*

Further, Plaintiff has not set forth any evidence showing that she was qualified for any other positions. Because Plaintiff has failed to show that there were any available positions for which she was qualified, she has failed to establish the second factor of her *prima facie* case.

Assuming *arguendo* that there were available positions for which Plaintiff was qualified, Plaintiff's claim would still fail because she has not established the fourth element, *i.e.* demonstrating that the adverse employment action raises an inference of discrimination. Defendant argues that Plaintiff has not established the fourth factor of the *prima facie* case because she has not shown that Defendant's refusal to grant her request to be given a light duty position occurred under circumstances giving rise to an inference of discrimination. (*See* Def.'s Simm. J. Mem. at 16.)

Regarding the fourth element, the Court must determine whether the proffered evidence shows circumstances that would be sufficient to permit a rational fact-finder to infer a discriminatory motive. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997). The

Second Circuit has recognized that circumstances contributing to an inference of discrimination include "the employer's continuing, after the employee's discharge, to seek applicants from persons of employee's qualifications to fill that position, an employer's criticism of plaintiff's performance in ethnically degrading terms, an employer's invidious comments about others in employee's protected group . . . . " *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994); *see also Jamieson v. Poughkeepsie City Sch. Dist.*, 195 F. Supp. 2d 457, 468 (S.D.N.Y. 2002).

A plaintiff may also show that the circumstances surrounding the adverse employment action give rise to an inference of race discrimination by demonstrating that "similarly situated employees of a different race were treated more favorably." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). " "Although the ultimate burden in making a prima facie case is slight, the issue of whether fellow employees are similarly situated is somewhat strict." Brown v. Middaugh, 41 F. Supp. 2d 172 (N.D.N.Y. 1999). . In order to raise a question of fact as to similarly situated, evidence of an "objectively identifiable basis for comparability" must be present. Graham,, 230 F.3d at 40 (quoting Cherry v. American Tel. & Tel. Co., 47 F.3d 225, 229 (7th Cir. 1995). "To be 'similarly situated,' the individuals with whom [plaintiff] attempts to compare herself must be similarly situated in all material respects." *Shumway v. United Parcel Serv.*, 118 F.3d 60, 64 (2d Cir. 1997) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). The "other employees must have reported to the same supervisor as the plaintiff, . . . and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct." *King v. Aramark Servs., Inc.*, No. 97-CV-3924 (JG), 1999 WL 669230, at *10-11 (E.D.N.Y Aug. 27, 1999) (concluding that

plaintiff failed to establish a prima facie case on the grounds that plaintiff had not provided the court with any details regarding the other employees therefore the "sparse and undocumented allegations" provided by plaintiff were not sufficient to show that plaintiff was similarly situated to other employees). *See also Graham v. Long Island Railroad,* 230 F.3d 34, 40 (2d Cir. 2000) (In order to satisfy *Shumway's* "all material respects" standard a plaintiff must show "co-employees were subject to the same performance evaluation and discipline standards.").

Plaintiff points to three Caucasian employees who she claims were assigned to light duty positions when they had injuries: Julienne Mazzia, Arlene Davis and John Wettpha.[4] Plaintiff argues that there is an inference of discrimination because Defendant did not provide her with such a position. Plaintiff also submitted a letter from Michele Lorber, a Caucasian female, stating that she had been accommodated after sustaining an injury.

Defendant's response to Plaintiff's claim regarding the three Caucasians is threefold. First, Defendant points to the absence of any evidence establishing that any of these individuals were similarly situated.. Defendant's Reply Mem. at p. 6. Second, according to Defendant, there were no Clerk 1 positions available in lighter duty units when Plaintiff made her request. The Claims Department is the largest department and in order to function it needs its Clerk 1 employees to perform their essential duties — their primary duty being to obtain files, which involves bending, lifting and carrying. Herimaat Aff. at ¶ 10. Finally, Defendant states that no other Clerk 1 employee — black or white—made a request for accommodation wherein a light duty assignment or an exemption from a rotation in any department was sought. *Id*. at ¶ 21.

---

[4]It appears that these three individuals are not the new hires discussed *supra* at p. 9.

Plaintiff has not offered any evidence that the three Caucasian employees who allegedly received light duty positions were "similarly situated."[5] While Plaintiff has stated that the three Causasian employees held the positions of Clerk 1, Grade 6, she has not submitted any admissible evidence regarding 1) the degree of their alleged disabilities; 2) whether, like Plaintiff, these employees were no longer able to perform the essential functions of the Clerk 1 position; 3) whether these individuals were granted light duty positions at the same time Plaintiff sought a light duty position. Accordingly, Plaintiff has failed to sustain her burden of establishing these employees are "similarly situated." *See Norville v. Staten Island University Hosp.*, 196 F.3d 89, 96 (2d Cir. 1999) (upholding judgment as a matter of law on race discrimination claim that hospital refused to accommodate plaintiff's disability while accommodating two disabled white nurses where no evidence was submitted "regarding the specific degree to which either of these nurses were disabled, the type of work they did prior to becoming disabled, or the ways in which they were limited in performing their job" and therefore plaintiff had failed to demonstrate they were "subject tot he same standards governing performance evaluation" or that they "engaged in conduct similar to hers.")

Plaintiff's reliance on Michele Lorber's letter is also misplaced. Lorber was a claims investigator who was transferred to the position of claims examiner as a result of a reorganization. Plaintiff has not shown that she is similarly situated to Lorber. It is undisputed that Lorber held a position which cannot be equated with Plaintiff's position as a Clerk 1 employee and that the two positions were subject to different performance standards. Therefore,

---

[5]The Court notes that during discovery Plaintiff was represented by counsel and that discovery has been completed.

Plaintiff has failed to establish that Lorber is "similarly situated [to Plaintiff] in all material respects." *Shumway*, 118 F.3d at 60, 64.

Furthermore, Plaintiff has not presented "even a scintilla of admissible evidence" that Defendant's refusal to provide her with a light duty position or her termination "occurred under circumstances giving rise to an inference of race discrimination." *Pruitt v. Metcalf & Eddy Inc.*, No. 03 Civ. 4780(DF), 2006 WL 39621, at *9 (S.D.N.Y. Jan. 6, 2006) (holding that summary judgment dismissing an employee's race discrimination claim under Title VII was appropriate where employee offered conclusory statements without supporting the statements with evidence). Plaintiff's claim that her office manager Bill Stewart "didn't like Me because I wouldn't let Him play with Me and treat Me like a slut or a nobody," does not present an inference of race discrimination. Lacking any evidence that creates an inference of race discrimination, Plaintiff's allegations are merely conclusory. *See Meiri v. Dacon*, 759 F.2d at 998; *see also Meng*, 73 F. Supp. 2d at 392. As a result, Plaintiff has failed to establish the fourth element of her *prima facie* case.

Plaintiff has not provided any evidence showing that Defendant's failure to provide her with a light duty position or her termination was racially motivated and "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri*, 759 F.2d at 998.

In sum, Plaintiff has failed to establish both the second and fourth elements of her *prima facie* case of race discrimination. Upon the evidence provided, no reasonable factfinder could conclude that Plaintiff was a victim of race discrimination. Consequently, the Court grants

Defendant's motion for summary judgment as to Plaintiff's race discrimination claim under Title VII.

## CONCLUSION

In conclusion, Plaintiff has failed to establish a prima facie case of discrimination based on disability or race. Thus, the Court GRANTS Defendant's motion for summary judgment in its entirety. The Clerk of the Court is directed to close this case.

**SO ORDERED**

Dated: Central Islip, New York
November 8, 2006                    _____/s/_____
                                    Denis R. Hurley,
                                    United States District Judge